No. 13601

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

---

ST. PAUL MERCURY INSURANCE COMPANY,

Plaintiff and Appellant,

-vs-

JEEP CORPORATION AND AMERICAN MOTORS
SALES CORPORATION,

Defendants and Respondents.

---

Appeal from: District Court of the Sixth Judicial District,
Honorable W. W. Lessley, Judge presiding.

Counsel of Record:

For Appellant:

Berg, Angel, Andriolo & Morgan, Bozeman, Montana
Gregory O. Morgan argued, Bozeman, Montana

For Respondents:

Corette, Smith and Dean, Butte, Montana
Dolphy O. Pohlman argued, Butte, Montana

---

Submitted: October 4, 1977

Decided: DEC 12 1977

Filed: DEC 12 1977

*Thomas J. Kearney*
Clerk

Mr. Justice Frank I. Haswell delivered the Opinion of the Court.

Plaintiff brought this action in District Court as the subrogee of Jack Shanstrom to recover monies paid to its insured for fire damage in the engine compartment of his 1970 Jeep Wagoneer. At the close of plaintiff's case, defendants were granted a directed verdict. Plaintiff appeals.

Judge and Mrs. Jack Shanstrom purchased a 1970 Jeep Wagoneer in the fall, 1970. The Jeep was purchased secondhand from Gateway Motors in Livingston, Montana, and had been driven 14,000 to 16,000 miles. Defendants are the manufacturer and distributor of the automobile.

On July 16, 1971, a fire occurred in the Jeep while it was being driven by Mrs. Shanstrom. At that time the Shanstroms had owned the Jeep for approximately six months and the vehicle odometer registered 26,342.4 miles. Mrs. Shanstrom testified that the fire occurred while the Jeep was being driven on a highway west of Livingston. She testified that she became aware of the fire by observing smoke coming through the dash and by seeing the paint bubbling on the hood and smoke coming from the engine compartment. The fire was extinguished by a passerby; no personal injuries were suffered. No evidence of irregularity in the operation of the Jeep was noted prior to the fire.

The Jeep was towed directly to Gateway Motors where it had been purchased. At the trial, Mel Clendenin, the service manager at Gateway Motors, testified as plaintiff's expert witness. Clendenin testified that the fire had destroyed everything under the hood except the actual engine block. He concluded that the fire started at or near the carburetor while the engine was in operation and that gasoline was the fuel for the fire. He further concluded that a spark outside the engine caused the gasoline to ignite.

- 2 -

The testimony reflected that the Jeep had been subjected to normal service procedures during the time the Shanstroms owned it, but there was no evidence that any major repairs or modifications had been performed.

Mrs. Shanstrom and Clendenin were the only witnesses called by plaintiff at trial. Upon resting of plaintiff's case, defendants made a motion for directed verdict on the basis of appellant's failure of proof. The motion was granted and this appeal followed.

The sole issue upon appeal is whether the District Court erred in granting defendants' motion for directed verdict.

Appellant's case before the District Court was based upon three legal theories: (1) Breach of implied warranty of merchantability under section 87A-2-314, R.C.M. 1947; (2) strict liability in tort; and (3) the doctrine of res ipsa loquitur. Plaintiff contends that sufficient evidence is present in the record to allow the case to go to the jury on any of the three legal theories. We disagree.

On motion for a directed verdict the evidence must be viewed from a standpoint most favorable to plaintiff and every fact must be deemed proved which the evidence tends to prove. No case should ever be withdrawn from the jury when reasonable men might draw different conclusions from the evidence. Solich v. Hale, 150 Mont. 358, 435 P.2d 883 (1967); Teesdale v. Anschutz Drilling Co., 138 Mont. 427, 357 P.2d 4 (1960); Mellon v. Kelly, 99 Mont. 10, 41 P.2d 49 (1935). In reviewing a directed verdict the issue is whether there are only questions of law. LaVelle v. Kenneally, 165 Mont. 418, 529 P.2d 788 (1974). This, however, does not relieve plaintiff of the burden of producing evidence in support of each element essential to its recovery. See Nixon

v. Huttinga, 163 Mont. 499, 518 P.2d 263 (1974).

The crux of this case is a determination of whether plaintiff's evidence proved all the requisite elements of one or all of its theories of recovery. In Barich v. Ottenstror, ____Mont.____, 550 P.2d 395, 397, 33 St.Rep. 481 (1976), we recently quoted Professor Prosser in Law of Torts 4th ed., § 103, p. 671, and stated:

> "'The proof required of a plaintiff seeking to recover for injuries from an unsafe product is very largely the same, whether his cause of action rests upon negligence, warranty, or strict liability in tort.
>
> "'On any of the three bases of liability, the plaintiff has the initial burden of establishing three things. The first is that he has been injured by the product. * * * The second is that the injury occurred because the product was defective, unreasonably unsafe. * * * The third is that the defect existed when the product left the hands of the particular defendant.'"

We have carefully scrutinized the record in this matter and the conclusion that plaintiff failed to prove his case is inescapable. Plaintiff has not proven that the defect that caused the fire existed when the Jeep left the hands of the defendants. Mr. Clendenin, plaintiff's expert witness, testified on cross-examination as follows:

> "Q. And if something had not been maintained properly, such as part of the fuel line or this rubber hosing, maybe there was a damage to it, a cut in it, that could have caused this fuel source, and that would have been something not at all involved when this Jeep left the hands of the manufacturer back in Detroit or wherever the Jeep was made, isn't that right? A. If it was physical damage to a line or hose or something, yes.
>
> "Q. Just normal wear and tear could possibly cause that? A. That's right."

Mr. Clendenin further testified:

> "Q. Okay, In fact, you don't know, and I don't even know if anyone knows, that the parts that were on this engine at the time of the fire were the original parts to the Jeep, you don't know that, do you? A. I couldn't tell you that!
>
> " * * *

- 4 -

"Q. But that wrong that we are talking about, you can't say was a defect when it left the hands of either the manufacturer or the seller, that is the American Motors Sales Corporation, can you? A. No, I can't."

In Barich v. Ottenstror,/p. 398, we stated:
supra,

"It is a well established rule in products liability cases that a manufacturer or seller is not liable for product caused injuries in the absence of proof that the instrumentality in question was defective or dangerous at the time the defendant was in possession or control of it, or when such product left defendant's possession and control. Richardson v. Farmers Union Oil Co., 131 Mont. 535, 312 P.2d 134; American Radiator & Standard Sanitary Corp. v. Fix, 200 F.2d 529; Northern v. General Motors Corp., 2 Utah 2d 9, 268 P.2d 981. In Restatement of Torts 2d § 402A, this concept to strict liability situations appears in Comment g, p. 351:

"'The burden of proof that the product was in a defective condition at the time that it left the hands of the particular seller is upon the injured plaintiff; and unless evidence can be produced which will support the conclusion that it was then defective, the burden is not sustained.'

"The law does not presume that a product was defective at the time it was under the control of a manufacturer or distributor, from a mere showing that a product may have been defective at the time of the accident. Maryland Cas. Co. v. Independent Metal Products Co., 8 Cir., 203 F.2d 838." See also, Brandenburger v. Toyota, 162 Mont. 506, 513 P.2d 268.

The judgment of the District Court is affirmed.

_____
Justice

_____
Chief Justice

_____

_____

_____
Justices

- 5 -