No. 87-565

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

---

ALMA S. JANZ,

        Plaintiff and Appellant,

-vs-

DUANE QUENZER, d/b/a BEN FRANKLIN
STORE,

        Defendant and Respondent.

---

APPEAL FROM: District Court of the Sixteenth Judicial District,
In and for the County of Fallon,
The Honorable Alfred B. Coate, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Ira Eakin, Billings, Montana
        Charles Peterson, Beach, North Dakota

    For Respondent:

        Moulton, Bellingham, Longo & Mather; Fred W. Robinson,
        Billings, Montana
        Terry J. Hanson, Miles City, Montana

---

Submitted on Briefs: April 28, 1988

Decided: June 28, 1988

Filed: JUN 2 ...

_____
Clerk

Mr. Justice R. C. McDonough delivered the Opinion of the Court.

This appeal from the Sixteenth Judicial District concerns appellant Janz's claim for wrongful discharge in breach of; public policy, an express contract for employment, and the implied covenant of good faith and fair dealing. Janz alleged that the claim arose from the actions of respondent Quenzer as her employer. Quenzer moved for summary judgment contending that no employment relationship existed between the parties. The District Court agreed and granted Quenzer's motion. Janz appeals this decision. We affirm.

Janz presents two issues for review:

(1)   Did the Court err when it decided that Alma Janz was not employed by Duane Quenzer, and when it granted Quenzer's motion for summary judgment on that basis?

(2)   Did the District Court err when it concluded that Alma Janz was not entitled to punitive damages as a matter of law?

The undisputed facts are briefly as follows: Kenneth Heier owned the Ben Franklin Store in Baker, Montana. Janz and her daughter, Roxanne, worked for Heier. Heier offered to sell the store to Quenzer. The parties agreed to a purchase price which included the store and the store's inventory up to $160,000.00. They also agreed that Quenzer could negotiate to purchase any store inventory in excess of $160,000.00. Quenzer and Heier planned to ascertain the value of the store's inventory prior to closing the deal.

2

Janz heard about the sale and contacted Quenzer to inquire whether or not he would continue her employment. Quenzer told Janz he planned to keep her on.

From November 1, 1983, to at least the morning of November 3, 1983, Heier employed Janz to help with the inventory. On November 4, 1983, the inventory was either completed or nearing completion. In the morning hours of November 4, 1983, Janz and her daughter, Roxanne, arrived at the store to begin work for the day. Shortly after their arrival Quenzer told Roxanne she could not wear jeans to work. Roxanne told Quenzer that she had no other type of pants to wear, and then complained to her mother. The parties argued, and appellant Janz and her daughter left the store. As Janz left the store Quenzer asked for keys to the store kept by Janz. Janz refused to give the keys to Quenzer telling him that they belonged to Heier.

Later that morning Heier spoke to Janz about the incident. He told Janz he felt bad about the incident, and payed Janz for her wages for the period of time through November 3, 1983.

I.

Under Rule 56(c), M.R.Civ.P., summary judgment is properly granted where the moving party meets the initial burden of showing the absence of a genuine issue as to any fact deemed material in light of the substantive principles that entitled the movant to judgment as a matter of law. Fleming v. Fleming Farms, Inc. (Mont. 1986), 717 P.2d 1103, 1105-06, 43 St.Rep. 776, 779. And the party opposing the motion fails to come forward with evidence supporting the existence of a material question of fact. Fleming, 717 P.2d at 1106. All reasonable inferences that may be drawn from the offered proof must be drawn in favor of the party

3

opposing summary judgment. Cereck v. Albertson's, Inc. (1981), 195 Mont. 409, 411, 637 P.2d 509, 511.

The resolution of this issue depends on the existence of a material question of fact on whether Quenzer employed or contracted to employ Janz. Malloy v. Judge's Foster Home Program, Inc. (Mont. 1987), 44 St.Rep. 1996, 1999, 746 P.2d 1073, 1075. We hold that the District Court correctly granted summary judgment on the claims at issue because no reasonable inference may be drawn that either the contract or the relationship existed.

Janz does not dispute that on the morning of November 3, 1983, she worked for Heier. However, according to Janz, a material fact question exists as to whether Quenzer took over operation of the store during the afternoon of November 3, 1983. According to Janz, deposition statements demonstrate a factual issue over the existence of Quenzer's control of the store and its employees. Janz contends that a reasonable inference may be drawn that Quenzer's control of the store created the employment relationship she has based her claims upon.

Quenzer answers that he hired no employees until after Janz "walked out" of the store. To support this contention, Quenzer points out that he did not own the store until after he allegedly fired Janz.

First, we agree with Janz that a showing that Quenzer controlled the store and its employees may be enough in the appropriate case to prevail against a motion for summary judgment on this issue. However, Janz's control assertion fails to raise a material question of fact as to the existence of an employment relationship arising from control under the undisputed facts of this case.

Janz's specific contentions on Quenzer's control of the store and its employees appear in her brief as follows:

4

Quenzer was in full control of the operation of the business on the afternoon of November 3, 1983, following the inventory. At that time, the Plaintiff and other employees were taking their directions and orders from Quenzer as the new owner. Quenzer advised Alma Janz and the other employees on November 3 when to appear for work on the morning of November 4. Quenzer received all of the receipts from the business on the afternoon of November 3 and November 4. Quenzer hired employees who began work on the morning of November 4 following the discharge of Mrs. Janz. The employees were hired to replace Mrs. Janz, her daughter and Mary Ann Aguayo and were paid wages by Quenzer for their work on November 4. Quenzer allowed Janz to carry on her duties on the morning of November 4 prior to terminating her daughter's employment with him. Furthermore, the franchise agreement executed by Quenzer specifically provided that he was the owner of the store as of November 1, 1983.

We will consider these contentions individually to determine whether a material fact question exists as to the establishment of an employment relationship between the parties. First, the fact that Quenzer employed other workers on November 4, 1983, after Janz left the store fails to raise any inference as to Janz's alleged term of employment. The events at issue occurred prior to Quenzer's employment of other individuals.

Second, Janz cites to a deposition statement made by Quenzer contending that the statement infers employment by control. According to Janz, Quenzer stated, as recorded on page 20 of his deposition, that the inventory was completed on November 3, 1983, and that the store reopened for business on the afternoon of November 3, 1983. This assertion exaggerates the content of Quenzer's statement.

Quenzer stated on page 20 of the deposition that the inventory took two and a half days. One could deduce from this statement that since the inventory began on November 1,

1983, it was over by the afternoon of November 3, 1983. However, on pages 24 and 25 of the deposition Quenzer clarified his earlier statement on when the inventory was completed:

> Q. Did you handle the business of the store on November 4th?
>
> A. To what degree?
>
> Q. Whatever was required of you at that point.
>
> A. No. Howard Philmore was the inventory man. He was the one in charge.
>
> Q. However, the inventory was completed November 3rd, correct?
>
> A. The count. Not the adding.
>
> Q. Okay. I'm not talking about the inventory directly. I'm talking about the business of the store, the operation of the store itself.
>
> A. Reword that.
>
> Q. Who handled the operation of the store, not having to do with the inventory, but the actual operation of the store on November 4th?
>
> A. Howard Philmore.

Thus, Quenzer stated only that a part of the inventory was completed on November 3, 1983, and no reasonable inference may be drawn that Quenzer controlled the store's employees simply because on page 20 of his deposition he stated that the inventory took two and a half days. The statements of Quenzer, as revealed by his assertion that Philmore was in charge of the store, are in direct opposition to Janz's bald assertions on the control issue.

Next, Janz contends that Quenzer controlled the store on the afternoon of November 3, 1983, because he told Janz and co-employee Mary Ann Aguayo what time to come to work on November 4, 1983. The fact that Aguayo and Janz asked Quenzer when they should report to work on November 4, 1983, fails to reasonably infer that Quenzer's control of the store and its employees established an employment relationship between Janz and Quenzer on the afternoon of November 3, 1983, and the morning of November 4, 1983. The fact only infers that Quenzer and Aguayo planned to enter an employment relationship on November 4, 1983. Thus, no reasonable inference may be drawn that an employment relationship existed from these statements.

Other than the statement that Quenzer responded to her question on what time to appear for work, Janz failed to specify incidents occurring on November 3, 1983, which demonstrate Quenzer's control of the store. Conclusory or speculative statements are insufficient to raise a genuine issue of material fact. Barich v. Ottenstror (1976), 170 Mont. 38, 42, 550 P.2d 395, 397. The statements of Janz fail to reveal anything but preparation to begin an employment relationship, and again no reasonable inference may be drawn that Janz's employment was initiated by Quenzer's control of the store on the afternoon of November 3, 1983, or the morning of November 4, 1983.

Janz also contends that Quenzer allowed her to begin work on the morning of November 4, 1983, because she spent eight or ten minutes dusting shelves prior to arguing with Quenzer and leaving the store. The statement on the shelves is recorded at page 60 of her deposition. Janz also stated that she began the work on the shelves without any direction from Quenzer. We hold that the eight or ten minutes Janz

7

spent dusting is insufficient to allow a reasonable inference that Quenzer controlled the store and its employees.

The two remaining assertions on control by Janz may be disposed of quickly. First, Janz contends that the commencement of a franchise agreement between Quenzer and Household Merchandising Inc., (Ben Franklin), on November 1, 1983, raises a material fact question as to when Quenzer took over the store. We disagree. The franchise agreement infers that Quenzer intended an earlier sale date, but this inference does not create a material question of fact as to the date Quenzer actually did take over the store. The facts are undisputed that Quenzer did not take over the store on November 1, 1983, as provided by the agreement.

Second, Janz argues that Quenzer's receipt of proceeds for store sales made during the afternoon of November 3, and on November 4, 1983, creates a material question of fact on whether Quenzer controlled the store on November 3, 1983. The record establishes that Quenzer was entitled to the proceeds only after closing occurred on the afternoon of November 4, 1983. If the sale had not closed, the proceeds would have belonged to Heier. Thus, no reasonable inference may be drawn that the receipt of the proceeds on a given day marks the beginning of an employment relationship between the parties.

While Janz's references to the record fail to reveal material fact questions on the existence of an employment relationship between the parties, Quenzer has presented solid citations to deposition statements demonstrating the nonexistence of the alleged relationship: (1) Quenzer did not own the store at the time of the alleged termination; (2) Heier paid Janz's wages for November 3, 1983; (3) a Ben Franklin representative was in charge of the inventory which proceeded the sale; (4) Janz refused to give the keys to the

store to Quenzer when she left on November 4, 1983, and told Quenzer they belonged to Heier. Quenzer's proof discloses that no genuine issue of material fact existed as to the absence of the employment relationship. Once the record discloses:

> no genuine issue of material fact, the burden of proof shifts to the party opposing the motion for summary judgment to show by present facts of a substantial nature that a material fact issue does exist.

Mayer Bros. v. Daniel Richard Jewelers, Inc. (Mont. 1986), 726 P.2d 815, 816, 43 St.Rep. 1821, 1823. Janz's proof fails to meet this burden.

The last claim dealt with here is the alleged breach of an express employment contract. We hold that no contract existed between the parties because the absence of the terms of the employment makes the alleged contract fatally uncertain. Bishop v. Hendrickson (Mont. 1985), 695 P.2d 1313, 42 St.Rep. 259. The record reveals that the parties' conflict actually arose in defining the terms of employment for Janz's daughter, i.e., that she not wear jeans. The parties' negotiations did not proceed further than the issue of proper attire for store employees. Thus, no contract existed and we affirm on this issue.

## II

Janz concedes in her reply brief that resolution of the first issue in favor of Quenzer moots the second issue. Thus, resolution of issue 1 disposes of this appeal. AFFIRMED.

                                             _____
                                                       Justice

We Concur:

9

_____
              Chief Justice

_____

_____

_____

_____
              Justices